UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ELLIS WALLACE,<br>Plaintiff,<br>v.<br>C. E. DUCART, et al.,<br>Defendants. | Case No. 17-cv-05488-SI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br>Re: Dkt. No. 1 |

## INTRODUCTION

George Wallace, an inmate at Pelican Bay State Prison, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. The complaint is now before the Court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Wallace alleges the following in his complaint: At about 8:50 a.m. on December 6, 2016, inmates on the Pelican Bay prison yard were ordered to get down on the ground. There was a disturbance in another part of the yard that was quickly subdued, but Wallace and other inmates in his area were required to remain on the cold ground. Wallace and other inmates asked to use the bathroom, but the guards refused to allow them to use the bathroom. Eventually, Wallace and other inmates got up from the ground to use the bathroom. These inmates were put in handcuffs and taken to another yard, where they were required to wait in handcuffs and not allowed to use the bathroom. Wallace eventually defecated and urinated on himself. Sergeant Drager refused to allow the handcuffs to be removed so that Wallace could go to the bathroom; Drager instead said that Wallace would be allowed to shower later. Defendants Davis, McMahan and Drager denied

him clean clothes after he defecated and urinated on himself. Docket No. 1 at 7. Wallace remained in handcuffs for 3-1/2 hours. *Id.* at 7-8. At about 1:30 p.m., Wallace was taken from the cold concrete yard and his handcuffs were removed. *Id.* at 8. He then was required to strip naked in front of female guards while his clothes were searched, he was sent through a metal detector and he was sent back to his cell. *Id.* at 8-9. (His complaint indicates that all the inmates were strip searched. *See id.* at 6.)

Wallace contends that requiring him to strip in front of the female guards violated his First Amendment religious rights because, under his religion, he is not supposed to be uncovered in front of a woman who is not his wife. *Id.* at 9.[1] Wallace also contends that his First Amendment religious rights were violated because, with urine and feces on him, he could not properly pray or clean himself before praying at his proper prayer times. *Id.* at 9-10.

He also claims that requiring him to strip violated his Eighth Amendment rights because making him strip while he had feces and urine on him was designed to humiliate and degrade him in front of women. *Id.* at 9. Wallace further claims that requiring him to strip was unnecessary because he was far away from the location where the weapon was found and because the inmates located near the weapon already had been taken away. *Id.*

Wallace received a rule violation report for disobeying the orders to stay on the ground on December 7, 2016. The documents attached to his complaint show that he was found guilty at a hearing on January 13, 2017. *Id.* at 50. The discipline initially imposed was 90 days loss of time credits, 90 days loss of privilege group C, and 90 days loss of yard recreation privileges. *Id.* at 57. He filed an appeal, and the RVR was ordered reheard. *Id.* at 42. At a rehearing on August 22, 2017, Wallace was found guilty of delaying a peace officer in the performance of duty and was assessed a 90-day loss of time credits. *Id.* at 70. Wallace contends that he was denied a proper investigation, was denied witnesses and was denied video footage he requested. *See id.* at 13. The loss of time credits apparently will have little practical impact, as Wallace is serving a sentence of

---

[1] Wallace states that his "religious belief is Muslim, the way of the teachings of Jesus and the laws of the prophets that were sent to every people that God raised up for their purpose to fulfill the Word of God in every land in the Genetic of time travel." Docket No. 1 at 10.

2

1 life without the possibility of parole. *See id.* at 46 (listing his MEPD, or minimum eligible parole date, as 1/25/9999); https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=AF8343 (last visited Jan. 8, 2018).

Wallace further alleges: Warden Ducart was "put on notice of the violations that took place" on December 7, 2016 by Wallace's inmate appeal, but failed to address Wallace's concerns. Docket No. 1 at 10. Defendants Davis and McMahan are responsible because they failed to report his ill-treatment while they were on the concrete yard with him. *Id.* Defendant Enos failed to obtain all the witnesses and the video footage Wallace requested. *Id.* at 11. Defendant Buchanan ordered the handcuffs put on Wallace, but did not handcuff or issue similar disciplinary charges against other White inmates Buchanan had taken to a different concrete yard. *Id.* Defendant Hodges ruled on Wallace's inmate appeals inconsistently. *Id.* Defendant Countess failed to obtain "the true video footage" for Wallace's disciplinary hearing and/or inmate appeals. *Id.* at 12.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

<u>Eighth Amendment</u>: The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. at 832. A plaintiff alleging that conditions of confinement amount to cruel and unusual punishment prohibited by the Eighth Amendment must satisfy a two-prong test. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). First, a plaintiff must satisfy an objective test showing that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, courts consider the circumstances, nature, and duration of the deprivation. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Second, the plaintiff must prove that the prison official inflicted the deprivation with a "sufficiently culpable state of mind," that is, with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834.

Giving the *pro se* complaint the liberal construction to which it is entitled, the court finds that the complaint states a cognizable claim for an Eighth Amendment violation based on the allegations that members of the correctional staff made him lie or sit on the cold concrete ground for several hours, did not allow Wallace to use the bathroom once he was handcuffed, and denied him clean clothes after he defecated and urinated on himself. *See Johnson v. Lewis*, 217 F.3d 726, 732-33 (denial of access to toilets for prolonged period may violate Eighth Amendment). The complaint adequately links defendants Drager, Davis and McMahan to this claim. Defendants Drager allegedly would not let the handcuffs be removed so that Wallace could go to the bathroom, and allegedly would not provide clean clothes after Wallace soiled himself. Defendants Davis and McMahan allegedly failed to prevent or report Wallace's ill-treatment when they were on the concrete yard with him as he was denied access to a toilet and clean clothes.

An Eighth Amendment claim is not stated against defendant Buchanan, who allegedly ordered Wallace and other inmates "put in handcuffs while prone on the ground and to be taken to A4 building concret[e] yard." Docket No. 1 at 4. Ordering inmates handcuffed and segregated after they failed to comply with orders during a prison disturbance does not amount to the imposition of an objectively serious condition for Eighth Amendment purposes and does not reflect deliberate indifference to a risk to the inmate's health or safety. Handcuffing and segregating an inmate who was not complying with orders during a prison disturbance also does not amount to the malicious and sadistic use of force to cause harm. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

The complaint does not state an Eighth Amendment claim based on the strip search. Although Wallace states that the strip search while he had feces and urine on him was designed to humiliate and degrade him, other allegations in the complaint undermine the bad motive he attributes to correctional staff. That is, he was among many inmates required to strip, the strip searches followed a prison disturbance during which an inmate-manufactured weapon was found, and the strip searches followed an incident in which he and other inmates disregarded an order to stay on the ground while prison officials were dealing with the prison disturbance involving the inmate-manufactured weapon. Moreover, no defendant has been identified for this claim. As it cannot be said with certainty that an Eighth Amendment claim could not be stated, leave to amend this claim is granted.

Equal Protection Clause: "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted). Liberally

Liberally construed, the complaint states a claim against defendant Buchanan for an equal protection violation based on allegedly unequal treatment of inmates of different races. Lieutenant Buchanan allegedly charged Wallace with a disciplinary offense while not charging other inmates "because a white inmate was with them" and "none of the white inmates . . . who were on the concret[e] yard with" Wallace were found guilty. Docket No. 1 at 11.

Strip search and bodily privacy concerns (Fourth Amendment): The Fourth Amendment applies to the invasion of bodily privacy in prisons. *Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). Although incarcerated prisoners retain a limited right to bodily privacy, the Ninth Circuit has held that occasional viewing of unclothed male prisoners by female correctional officers does not violate the Fourth and Fourteenth Amendment rights of the inmates. *See Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988); *Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985). Assigned positions of female guards that require only infrequent and casual observation, or observation at a distance, of male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference. *See Michenfelder*, 860 F.2d at 334; *see, e.g., Somers v. Thurman*, 109 F.3d 614, 620 (9th Cir. 1997) (defendants entitled to qualified immunity because, as of the time of the 1993 searches, male inmates did not have a clearly established Fourth Amendment privacy interest in avoiding visual body cavity searches by female officials); *id.* at 622 ("it is highly questionable even today [in 1997] whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex, or from viewing of their unclothed bodies by officials of the opposite sex."); *Grummett,* 779 F.2d at 494-95 (rejecting prisoners' Fourth and Fourteenth Amendment claims against female guards who were assigned to positions that required infrequent and casual observation or observation at a distance of sometimes disrobed prisoners); *but cf. Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (*en banc*) (cross-gender strip search that involves touching the inmate's genitalia is unreasonable in non-emergency situations).

Wallace has not alleged enough facts to state a claim for a Fourth Amendment violation based on the strip search. He complains that he was required to strip in front of female guards, but does not allege how close those female guards were, how many female guards were present, what role (if any) the female guards played in the strip search. As the *Grummett* and *Michenfelder* cases suggest, a male inmate being required to strip for a search does not automatically result in a constitutional violation if females are at the prison. The female guards' proximity and involvement in the search makes a great deal of difference, but Wallace has not provided any

information about these points. Moreover, Wallace has failed to link any defendant to this claim, as he does not allege who made him strip for the search. Leave to amend is granted on the Fourth Amendment strip search claim.

Strip search and religious freedom (First Amendment and RLUIPA): The First Amendment guarantees the right to the free exercise of religion. In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). Inmates' religious freedoms also are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

The complaint alleges that the strip search violated Wallace's religious freedom rights, but does not link any defendant to the claim. If Wallace wants to pursue his religion claim, he must in his amended complaint identify defendant(s) for the claim and must be careful to allege facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

Rule violation report (Due Process Clause): An inmate has a federally-protected right to due process if he is deprived of a liberty interest of real substance. *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the

7

ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487. A prisoner must first allege facts showing that he was deprived of a protected liberty interest, i.e., suffered an atypical and significant hardship (e.g., a long-term SHU placement) or lost time credits that will inevitably affect the duration of his sentence.[2] Identifying a constitutionally-protected liberty interest is only the first step; the prisoner also must identify the procedural protections not provided to him when he was deprived of that constitutionally-protected liberty interest to state a claim. The procedural protections required in a prison disciplinary proceeding include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *See Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). There also must be some evidence to support the decision, *see Superintendent v. Hill*, 472 U.S. 445, 454 (1985), and the information that forms the basis for prison disciplinary actions must have some indicia of reliability, *see Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

The complaint fails to allege a liberty interest of real substance; without such a liberty interest, there can be no federal due process claim. The attachments to the complaint suggest that Wallace lost time credits, but the loss of time credits appears to be inconsequential for this prisoner serving life without parole. The attachments to the complaint suggest he also might have lost yard privileges and privilege group C for 90 days, although it is not clear whether these punishments were implemented before he had his second hearing on the rule violation report. Leave to amend is granted so that Wallace may attempt to allege the deprivation of a liberty interest of real substance. He needs to explain whether he actually was deprived of yard privileges for 90 days, and needs to explain whether the deprivation of yard privileges for 90 days meant that he was required to remain in his cell 24 hours a day during that period. He also needs to explain

---

[2] If a prisoner asserts that he was deprived of a constitutionally-protected liberty interest because prison officials imposed discipline that caused him to lose time credits and the loss of those time credits will inevitably extend his stay in prison, he must assert his due process claim in a petition for writ of habeas corpus rather than a civil rights complaint. *See Nettles v. Grounds*, 830 F.3d 922, 932-33 (9th Cir. 2016) (en banc).

8

whether he was deprived of "privilege group C" for 90 days, and to explain what "privilege group C" means for the inmate. And if the loss of time credits had any real impact, he needs to explain what that impact was. Additionally, Wallace must link defendant(s) to this claim, by alleging what each defendant did that caused him not to be provided the procedural protections identified in the preceding paragraph.

<u>Inmate appeals</u>: There is no federal constitutional right to a prison or jail administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Wallace had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to handle it in a particular way therefore did not amount to a violation of his right to due process. Any claims that correctional officials erred in their handling of an inmate appeal, or failed to find in Wallace's favor on the administrative appeal, are therefore dismissed without leave to amend.

Wallace alleges that warden Ducart was made aware of the problems by Wallace's inmate appeal and failed to address Wallace's concerns. The claim against warden Ducart is dismissed because there is no right to have an inmate appeal decided in any particular way. Insofar as Wallace is suggesting that the warden should be liable because he is in charge of the institution, that theory does not work either. There is no respondeat superior liability under § 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of another, such as an employee. *See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).

**CONCLUSION**

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **February 12, 2018**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For

9

claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated: January 10, 2018

_____
SUSAN ILLSTON
United States District Judge